# STRAFFORD.

## DECEMBER TERM, 1850.

---

## BARTLETT *v.* JENKINS, App't.

Where a company officer has removed without the limits of his company, he need not be consulted in the appointment of the non-commissioned officers.

Where a captain is ordered to parade his company at 8 o'clock, A. M., for a regimental review in the month of September, as he may parade his company by his own order, on one day other than the third Tuesday of May, he may parade them at 6 o'clock, A. M., of the day of the regimental review.

A return upon an order to warn a private to appear on parade, on the 22d of September, stated that the service was made on the 15th and 16th days of September. *Held*, that as as either day was more than four days before the 22d, the return was sufficient.

Where an order to warn a company is addressed to a private, it need not appear from the order that the person was a private.

A company was ordered to parade "at or *near* the house" of a person. *Held*, that the place was sufficiently designated, as the words *at* and *near* were, in that connection synonymous.

The provisions relating to exempts were not repealed by the Act of July 10th, 1846, and, in order to be relieved from military duty in the year 1847, a person was bound to file a certificate on or before the twentieth day of April.

Upon a prosecution to recover a fine for non-appearance at a regimental review, it will be sufficient if the order of the colonel to the captain be produced, as the captain is bound to obey it, and need not look beyond it.

APPEAL from the decision of a magistrate, upon a prosecution to recover a fine for neglect of military duty.

The complaint was dated November 6th, 1847, and was for default in not doing military duty on the 22d of September, 1847, at 6 o'clock, A. M., on parade, at or near the dwelling-house of Colonel Bumford, in Barrington, in the 6th Company of In-

5 *

fantry in the 25th Regiment. Of the evidence introduced to sustain the complaint, the following was excepted to:

The warrant to said Bartlett, as clerk of the company, was objected to, because in the warrant the company was described as being the 6th Company of Infantry in the 25th Regiment, 2d Division, and 2d Brigade, and in the complaint, the words " 2d Division, and 2d Brigade," are omitted.

The record of the appointment of the clerk was objected to, because it was signed by the Captain and Lieutenant only, and because it did not appear that the Ensign was present, when the appointment was made, or consulted in regard to the same.

To obviate this exception the plaintiff proved that at the time the order of appointment and record were made, and for several months previous, there was no Ensign of the company residing in Lee, or within the limits of the company.

It appeared that the Ensign resided in Dover, from April till the fall following, but was present at the fall training and did military duty.

No commission to the 1st Lieutenant was produced, but it was proved that the person who signed the order for the appointment of the clerk as such, had acted as Lieutenant of the company for the years 1846 and 1847.

The order and record were dated August 27th, 1847. It was objected that the commission should be produced.

In the Regimental order signed by the Colonel of the Regiment and directed to the Captain of the company, the Captain was directed to appear, &c., on the 22d of September, at 8 o'clock, A. M.

The complaint was for not appearing at 6, A. M., the company having been notified to appear at that hour.

It was objected that the Captain had no right to call out his company at 6, and the appellant was therefore not liable.

No order to the Colonel from his superior officer was produced. And it was objected, that the complaint could not therefore be sustained.

In correcting the list on the Roll Book, in the spring of 1847, the year was omitted to be stated by the clerk. The record

was permitted by this Court to be amended to correspond with the fact, to which the appellant excepted.

The company order to notify and warn the non-commissioned officers and privates to appear on the 22d of September, was directed to " Jerome Tuttle," simply, without any addition.

It appeared that the company had no sergeants at the time, and that Tuttle was a private in the company, and in making his return on the back of the order, he signed himself as private, but the order was excepted to because it did not address him as " private."

The order was signed by E. Bartlett " Captain or Commanding Officer."

It was excepted, that it did not appear what the official character of the said Bartlett was.

It appeared that Bartlett was the Captain of the company.

The order was to appear " at or near " the dwelling-house of H. Bumford.

It was objected that no place was specified for the appearance of the appellant.

The return on the order states the service to have been made on the different individuals on the 15th and 16th of September.

It was objected that it did not appear what day service was made.

The record of delinquents on said 22d of September stated that the company paraded "near the house " of H. Bumford.

It was objected that the order was to appear " at or near," which was in fact, two places, and the record showed the appellant absent from only one, namely, " near the house."

Copies were produced from the Adjutant's records, signed by him as Adjutant, fixing the limits of the company.

It was objected, that it did not appear that the individual, signing as Adjutant, was in reality so.

To obviate this objection it was proved that he was at the time, acting Adjutant of the Regiment.

On the part of the defence it was shown that the appellant was a member of the Society of Friends, in the years 1846, '47, and '48 ; that in 1846 and 1848 he filed the certificate

required by law, to exempt him from military duty, but filed none in 1847.

It was further shown that the orders from the Brigadier-General were issued to the Brigade Inspector, and by him to the Colonel, signed by the Brigade Inspector, and stated to be by order of the General. The defendant contended that this was insufficient to authorize the Colonel to order out his Regiment.

If the above exceptions and defence should not prevail, it appeared that the appellant was liable as set forth in the complaint.

A verdict was taken by consent, for the complainant, for the amount of the fine, on which judgment was to be rendered, or the verdict set aside and a new trial granted, as the opinion of the Court should be, upon the foregoing case.

*Soule*, for the defendant.

I. The Ensign was not present nor consulted in the appointment of the sergeant. Rev. Stat. chap. 93, § 8. Where due notice is given to all who ought to be consulted, the act of the majority is the act of all. *Williams* v. *Lunenburg*, 21 Pick. 75. But the Ensign here lived out of the limits of the company, and in such case he may be removed from office. Rev. Stat. chap. 93, § 10. But until his removal, he was a commissioned officer, and should have been consulted as such. He was sufficiently near to do his duty as an officer. The statute merely enacts the rule stated in the case of *Williams* v. *Lunenburg*, which relates to public officers. But can militia officers be considered public officers? The case of the *State* v. *Dwinnell*, 6 N. H. Rep. 167, states that where there is no Captain, the subaltern officers may appoint a sergeant.

II. The Captain was directed to parade his company at eight o'clock, A. M., and he directed the company to parade at six o'clock, A. M. Rev. Stat. chap. 87, §§ 1 and 2. By the 5th section, it is the duty of the Captain to obey the orders of the Colonel, in relation to the time and place of review, and he has no power to order them to appear except at the time and place

ordered by the Colonel. *Colburn* v. *Bancroft*, 23 Pick. 57. The Captain may parade his company by his own order on one other day only besides the 1st Tuesday of May.

III. There was no addition made to the name of the person who warned the company. If there are no sergeants, a private may be directed to warn the company, but it should appear in the order that there were no sergeants, and that for that reason the order was addressed to a private. Tuttle, being a private, the order should have been addressed to him in that capacity.

IV. The return on the order should have stated on what day the service was made on the different individuals. It merely appears that the order was served on the fifteenth and sixteenth days of September, and in order that it may appear that service was seasonably made, the day should be stated.

V. The company was ordered to be paraded at or near the dwelling-house of Colonel Bumford. This is too indefinite. The word " near," is a relative term. *How* near must the company appear ? In what direction from the house must the company be paraded ? This is not a warning to appear on parade at any place in particular. The allegation is that the company did not appear *at* or *near* Bumford's house, and the whole allegation must be proved, and it must be shown that the company did not appear *at* or *near* that house. The proof is confined to the fact that it did not appear *near* the house, and *non constat* that it did not appear *at* the house. This is a descriptive allegation, and should be strictly proved. The *State* v. *Dame*, 11 N. H. Rep. 271.

VI. The defendant was a member of the Society of Friends. He procured the requisite certificates for the years 1846 and 1848. Militia musters were abolished by law, by chap. 326, and were revived by chap. 484. In April, 1847, there was no law requiring a certificate to be filed, and the act of June, 1847, cannot operate retrospectively and change the rules for the decision of causes. *Wart* v. *Winnick*, 3 N. H. Rep. 477.

VII. The order should issue from the Brigadier-General to the Colonel, if the Major-General neglect to give it. Here no orders were proved except from the Colonel, who of himself has

no power to issue any orders. The plaintiff should show that all the requisitions of the law were complied with. The orders should issue from the Brigadier-General to the Colonel, and should be signed by the Brigadier-General. His power cannot be delegated. *Commonwealth* v. *Kellogg*, 9 Pick. 557.

*Stickney*, for the plaintiff.

I. As to the appointment of the clerk, the Ensign was absent, and there was no Ensign living within the limits of the company. Therefore the Ensign had no authority to act in the premises. Moreover, a majority of the officers may appoint a clerk. Rev. Stat. chap. 1, § 13 ; chap. 93, § 8. The case of the *State* v. *Dwinnell*, 6 N. H. Rep. 167, decides that an appointment by a majority is valid.

II. As to the difference in the hours of parade, the Captain might order the company to parade at an earlier hour than eight o'clock. It is necessary only that the company should be paraded at eight o'clock. But it cannot be a cause of complaint, that he is on the ground with his company sufficiently early to have the company organized by eight o'clock. The statute does not specify at what hour in the day the company should be paraded. Rev. Stat. chap. 87, §§ 3 and 5. The Captain must be there with his company at the hour specified in the order, and it has always been the practice to be there before the hour specified.

III. It is unnecessary to state in the order whether the person appointed to warn the company be a private or not. The law does not require it. Rev. Stat. chap. 78, § 1. It is enough if the order be directed to a person who is actually a private.

IV. As to the day of the service, the notice must be given four days before the training, and the training was on the 22d. Either the fifteenth or sixteenth day would be four days before the twenty-second, and that is all that is necessary. In the case of *Huntoon* v. *Kidder*, 8 N. H. Rep. 482, it was held that the day of the service must be stated. Here the day of the service was stated; it was either the fifteenth or sixteenth, either of which days was sufficiently early.

Bartlett *v.* Jenkins.

V. The allegation that the defendant did not appear *near* the house of Colonel Bumford, is a substantial allegation that he did not appear *at* the house of Bumford, because if he did not appear *near* the house, he could not have appeared *at* the house. The words *at* and *near* in the connection in which they are used, are synonymous.

VI. The defendant was a member of the Society of Friends, and they are included in the statute among the persons liable to do military duty. They are conditional exempts, but the exemption is a matter of proof. Rev. Stat. chap. 76, § 1. The conditions of the statute have not been complied with. In the year 1847, the defendant did not present his certificate, and therefore he was not exempt. The act of 1846, contains the same provisions as to exempts, and it requires the certificate to be presented. The act of June, 1847, imposes no new obligations, and therefore is not retrospective. Merely technical objections of this kind will not be regarded by the Court.

VII. In order to maintain this process, the clerk need not produce the orders addressed to the Colonel. The Captain cannot look behind the order he receives from the Colonel. If he might, all subordination would be destroyed. The question is, whether the orders to the Captain were according to the law. Rev. Stat. chap. 87, §§ 4 and 7. The law does not prescribe the form and manner in which the order shall be issued. The substantial matter is the issue of the orders. In this case, the order issued was the order of the Brigadier-General, and not of the inspector. The Brigadier need not sign the orders himself. The order to the Colonel must be derived from the Brigadier-General, and it is enough if the order purport so to be derived. No one but the Colonel could take any exception to the order, and he must determine whether he is bound to obey it. If so, he must then issue his order to the Captain.

*Christie,* for the defendant, in reply. The case of the *State* v. *Dwinnell,* decides only that where there is no Captain the other officers may appoint a clerk. Here there was not only a Captain, but there were also all the other officers. They

should have been notified, and should have had an opportunity to act. There only a majority may act. But the officers cannot assemble privately and act, for this would give an opportunity to commit fraud. The statute never meant that the minority should not have a chance to appear.

It cannot be a law that the soldier must either train or pay a fine, when the Colonel has no right to issue an order for a parade. The power of the Captain to order a training is confined to one day besides the third Tuesday of May. No one but the Brigadier or the Major-General can issue an order for a parade. The order in this case is only to the Adjutant, and not to the Colonel.

The Captain must obey the order of the Colonel as to the time and place of parade. If the Captain had ordered his company to parade at noon, he would not have obeyed the order issued to him. The hour is fixed by the Colonel in order that the Captain may have notice when his company is to be ready. The hour of six o'clock in the morning is an unreasonable hour for persons living at a distance; and besides, a parade at that hour, is a parade on the authority of the Captain alone, and no such authority is conferred upon him by the statute.

We may regard the militia law of June, 1847, as if there had been no militia law until that time; and the law means that a certificate must be furnished annually thereafter. The legislature cannot increase the military duty required of Quakers or make them pay any farther equivalent, and the defendant, having paid the fine in the month of April, purchased a discharge from military duty for that year.

Suppose the company is paraded either at or near the house of Bumford, and one of the alternatives is performed; that surely would be sufficient. If a private should go into Bumford's house, he would obey his orders. His duty is, upon arriving there, to await further orders, and it does not appear that he was not in Bumford's house all day, and if he were, his duty was performed.

The case of *Cutter* v. *Tole*, 3 Greenl. 38, decides that if a Captain of militia remove without the limits of the company, he

will still be its commanding officer, and that settles the question in this case as to the removal of the Ensign.

GILCHRIST, C. J.    Several of the exceptions taken at the trial have not been insisted on in the argument, and therefore we shall consider them as waived.

I.  When the clerk was appointed, the Ensign did not reside within the limits of the company, and was not consulted in the appointment.

Chap. 93, § 9, Rev. Stat., enacts that company officers shall reside within the limits assigned to their companies, and section 10 provides, that if any officer shall remove without such limits to reside, without resigning his commission, it shall be sufficient cause for an address for his removal.

In the case of *Cutter* v. *Tole*, 3 Greenl. 38, cited by the counsel for the defendant, the Captain had removed his residence out of the bounds of his command, but it was held that, under the statute of Maine, such removal did not render his office vacant, or even entitle him to a discharge, unless he had removed to such a distance that, in the opinion of the Major-General, it would be inconvenient for him to discharge the duties of his office. The case, therefore, is not in point here, owing to the difference in the statutes of the two States.

If residence within the limits of the company be considered of so much importance by the legislature, that, if the officer reside without them, he shall be subject to be removed by address, it would seem to have been the intention of the law that he should no longer be regarded as a proper person to perform the duties of his office.    The appointment of proper subordinates is one of the most important duties of superior officers, and if an officer who has removed out of the limits of his company may share with others in the exercise of this power, there seems to be no reason why he should not be permitted to perform any other official duty.    But it is certainly contrary to the spirit of the law, requiring officers to reside within these limits, to permit them to perform all the functions of their rank as well after as before their change of residence.    We think, therefore, that it

was unnecessary to consult the Ensign in the appointment of the clerk.

It may be added, that, by the Constitution, section 54, the " Captains and subalterns " shall appoint their non-commissioned officers. It is provided by the N. H. Laws, 402, § 5, (ed. of 1830,) that " all sergeants and corporals shall be appointed by the Captain and subalterns of the company." In the case of the *State* v. *Dwinnell*, 6 N. H. Rep. 167, there was no Captain, and the clerk was appointed by the subalterns. It was held that the appointment was valid, that a majority of the officers might appoint a clerk, and that an appointment made by any two of the commissioned officers was in compliance with the requisitions of the statute. The precise question now before us did not arise, but the decision shows that where there is a vacancy among the officers a majority of them may make the appointment; and our opinion is, that in this case, although the Ensign had neither resigned nor been removed, yet as he had changed his residence and was liable to be removed, the statute did not require him to be consulted. Whether, a majority having the power to appoint, it is necessary that all the officers should be consulted, if all of them reside within the limits of the company, is a question that need not be settled at present. This exception must be overruled.

II. It is the duty of the Captain to parade his company on the third Tuesday of May, annually, and also on one other day, and no more. Rev. Stat. chap. 87, §§ 1 and 2. There seems to be no reason why he might not parade his company at six o'clock, A. M., on the 22d day of September, as well as on any other day. He is bound to obey the orders of the Colonel in relation to the time and place of review; but if he obeys the order as to the time by parading his company at eight o'clock, A. M., who can complain of him that he has already assembled his company at six o'clock, and that consequently they have been two hours on the ground ? There is nothing in the case of *Colburn* v. *Bancroft*, 23 Pick. 57, which conflicts with this view of the case. There, the Captain ordered his company to appear at twelve o'clock, for military duty and inspection. It was held

that the order was valid, although the law required that the inspection should take place at one o'clock, P. M., as the Captain was authorized to *exercise* and *discipline* his company at any time on that day. We think this exception cannot be sustained.

III. The order to warn the company was addressed to " Jerome Tuttle." It is not denied that Tuttle was a private, but it is said that the order should have been addressed to him in that capacity. If it were at all important to the defendant that he should know from the order whether Tuttle were a sergeant or not, there might be some validity in the exception; but as we cannot see of what value the information would have been to him, or in what way it would have altered his position, or affected his liability, we think the exception must be overruled.

IV. The return on the order was seasonably made, whether it were on the 15th or 16th of September. A return that " four days' notice was given " is insufficient, and the date of the service must be stated. *Huntoon* v. *Kidder*, 8 N. H. Rep. 482. But if it appear clearly from the return that the service must have been four days before the day of parade, it will be sufficient. Here, the parade being on the 22d, and service either on the 15th or on the 16th day, would be more than four days before the 22d, and we think the return is sufficient.

V. The company was ordered to appear on parade *at* or *near* the house of Bumford. These words, *at* and *near*, are in this connexion synonymous. The word *at* is used " to denote near approach, nearness, or proximity." Richardson's Eng. Dict. " In general, *at* denotes nearness of presence," as *at* the ninth hour, *at* the house; *at* the house, " may be *in* or *near* the house." Webster's Dict. This exception must be overruled.

VI. The act of July 10th, 1846, repeals the law providing for a company parade on one day besides the 3d Tuesday of May, and for an annual regimental review. It contains no provision relating to absolute or conditional exempts. It repeals all acts inconsistent with its provisions, but it contains nothing inconsistent with the law requiring a certificate to be filed by exempts. In that particular the former law was in force in the month of April, 1847.

The act of July 3d, 1847, repealed the act of July 10th, 1846, in terms, and revived all the provisions of the militia laws which were repealed by that act. Among other things it revived the law providing for a regimental review, but fixed the time for it between the 15th of September and the 15th of October. Thus, there was a period between the 10th of July 1846, and the 3d of July, 1847, when there was no law requiring a regimental review between the 1st of September and the 15th of October, but such a law existed after the 3d of July, 1847. The defendant filed no certificate before the 20th of April, 1847, as he was bound to do even under the law of 1846, for that law required a parade for inspection and discipline on the 3d Tuesday of May. If this certificate had been filed, he would have been exempt from military duty for the year, for he would have come under the law as revived by the act of 1847. As the law relating to exempts remained in force during the whole period, and as he filed no certificate in 1847, the exception cannot be sustained.

VII. The Rev. Stat. chap. 87, § 5, provides that "Captains shall yield obedience to the orders of the Colonel in relation to the time and place of review." The order produced was from the Colonel, and the Captain was bound to obey it, without looking beyond it.

*Judgment on the verdict.*